UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM FAGG, SR.,

        Plaintiff,

v.                                                  Case Number 07-10785-BC
                                                   Honorable Thomas L. Ludington

SUPER FOOD SERVICES, INC.;
NASH-FINCH COMPANY; LIBERTY
BANKERS LIFE INSURANCE COMPANY,

        Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff William Fagg, Sr. sustained injuries after he slipped and fell on "black ice" on a winter night in Michigan. He filed a complaint for negligence in state court against Defendants Super Food Services, Inc. (SFS), Nash-Finch Company (Nash-Finch), and Liberty Bankers Life Insurance Company (insurer). Defendants removed the case to federal court and then filed the instant motion for summary judgment under Federal Rule of Civil Procedure 56.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I.

In his complaint, Plaintiff alleges that, on February 6, 2006 at approximately 4 a.m., he arrived at wholesale distribution center for groceries in Bridgeport, Michigan. Plaintiff works as a commercial truck driver, and he alleges that Defendants SFS and Nash-Finch own and operate that wholesale distribution center. Plaintiff states that he arrived at the premises and followed the only

procedure for incoming trucks: stop at the gate, exit his vehicle, walk over a driveway to the security building to alert them to his arrival, have the security gate raised, return to his vehicle, and park as directed by the security guard. He maintains that he slipped and fell as he returned to his vehicle. He asserts that the premises were inadequately lit and insufficiently shoveled, plowed, or salted. He allegedly suffered a fracture or dislocation of his tibia and fibula, as well as other injuries.

Based on Plaintiff's deposition, he left Green Bay, Wisconsin, with a truckload of cheese around 12:00 p.m. or 2:00 p.m. the day prior. He made a delivery in St. Johns, Michigan, where the weather was "cloudy on and off, rain, sleet, snow." *Pl. Dep.*, p. 63; Dft. Br., Ex. B [dkt #26-3]. During his drive to Bridgeport, he kept turning his windshield wipers on and off, because the weather kept shifting. When he pulled into the warehouse facility, he did not see any plowed snow. Before he got out of his vehicle, he observed that the ground had snow on it. He also saw "wet pavement" that was reflecting ambient light. He did not notice any ice on the ground, and he did not experience any difficulty walking when he first passed that way. After he fell, he later observed "wet pavement, ambient light, reflection" at the point where he had fallen. *Id.* at p. 87. Regarding lighting, he believed that light came from the guard shack and that the area where the trucks parked was illuminated. He could not recall whether he left his vehicle lights on when he exited. (The twelve-light system is allegedly comprehensive and would have illuminated the area in front of and around the vehicle.) He allegedly did not notice any salt on the ground before his fall, but he maintains that he observed salt distribution after that.

In an affidavit, Plaintiff states that black ice caused his fall. He maintains that, although he was paying attention to where he was walking, he could not see the ice because it was dark and because the pavement simply looked wet.

According to the deposition of a receiving supervisor for Defendant Nash-Finch, Patricia Pappes, mechanics and janitors sometimes handled snow and ice removal in a company vehicle. She believed that Plaintiff fell as he exited his vehicle. She recalled a few patches of ice near where he exited and, specifically, a patch nine inches in circumference. She felt that the ice was not obvious, because it did not "shine up at you." *Pappes Dep.*, p. 35; Pl. Rs. Br., Ex. 2 [dkt #29-2]. Further, she felt that if he had left his light on, that ice still would not have been visible. She did not observe any salt on the premises, and she later had it salted.

According to the deposition of a shipper receiver of one of the Defendants, Charles Carpenter, he noticed some slippery spots that it would have been difficult to observe. He felt that they looked like wet pavement. He did not notice any salt down on the ground, although he stated that someone later put out salt.

Plaintiff also provides a statement from a certified consulting meteorologist, Paul Gross, dated October 10, 2007. He concluded that the meteorological conditions supported concluding that black ice would have existed, if untreated. Further, he stated that this ice would have developed at least 24 hours prior to Plaintiff's fall and would have persisted unchanged, if untreated. He also maintained that all commercially available ice melters would have diminished any such ice.

Plaintiff asserts a claim of negligence against Defendants SFS and Nash-Finch, as well as against Defendant Liberty Bankers Life Insurance Company (insurer). The basis for Plaintiff's negligence claim against Defendant insurer is not clear from the complaint.

On February 22, 2007, Defendants removed the case here from state court. Now pending before the Court is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56.

II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III.

Plaintiff advances a single state law claim of negligence. A federal court sitting in diversity must apply the law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). More importantly, a federal court applying state law must defer to the state courts' interpretation of that law. *See Ziebart Int'l Corp. v. CNA Ins. Co.*, 78 F.3d 245, 250 (6th Cir. 1996) (stating that a federal court must defer to intermediate appellate court decisions as governing matters of state law).

The classic definition of negligence requires a showing of the following elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages.

*Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2004). Regarding premises liability, a possessor of land owes a legal duty to an invitee to exercise reasonable care to protect an invitee from an unreasonable risk of harm caused by a dangerous condition that the landowner knows or should know the invitee will not discover, realize, or protect against. *Bertrand v. Allen Ford, Inc.*, 537 N.W.2d 185, 189 (Mich. 1995) (citation omitted).

The Michigan courts have recently shifted premises liability jurisprudence in *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384 (Mich. 2001). Although questions of fact have traditionally been part of an analysis of the element of breach of duty, the Michigan courts now permit a factual inquiry to inform on determining whether a duty exists. In *Lugo*, the court stated that the duty of an invitor did not extend to "open and obvious" dangers that the invitee might reasonably have been expected to discover. *Id*. at 386 (citation omitted). Yet, "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. Not all "special aspects," however, have legal significance: "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id*. at 388. The court concluded that the plaintiff, who fell in a pothole in a parking lot, failed to show any special aspects of the pothole that did (or could) result in an unreasonable risk and that she faced only an "everyday occurrence." *Id*. at 389.

In *Mann v. Schusteric Enterprises, Inc.*, 683 N.W.2d 573 (Mich. 2004), the state supreme court reiterated the open and obvious doctrine. To determine whether an alleged dangerous condition is "open and obvious," the consideration must focus on a "reasonably prudent person," not on the characteristics of that particular plaintiff. *Id*. at 577 n.10 (citations omitted). In a case

that involved an intoxicated plaintiff who slipped and fell in a parking lot during a blizzard, the court required the same "reasonable conduct" from that plaintiff as from a sober person. *Id.* at 577.

In *Ververis v. Hartfield Lanes (On Remand)*, 718 N.W.2d 382 (Mich. Ct. App. 2006), the state intermediate appellate court reviewed a series of peremptory orders issued by the state supreme court. In *Kenny v. Kaatz Funeral Home, Inc.*, 697 N.W.2d 526 (Mich. 2005), the state supreme court adopted the dissent from the lower court, 687 N.W.2d 737 (Mich. Ct. App. 2004), which had concluded that the open and obvious doctrine foreclosed liability of a parking lot owner to a 79-year-old woman who slipped on black ice. There, the plaintiff observed three companions slipping in a snow-covered parking lot in late December in Michigan, so no reasonable Michigan resident would fail to be alerted to the hazardous condition. *Id.* at 748.

Similarly, in *Schultz v. Henry Ford Health Sys.*, 706 N.W.2d 203 (Mich. 2005); *Morgan v. Laroy*, 705 N.W.2d 685 (Mich. 2005); *D'Agostini v. Clinton Grove Condominium Ass'n*, 704 N.W.2d 706 (Mich. 2005), the state supreme court relied on *Kenny* to reverse decisions that allowed a plaintiff to withstand summary disposition in a black ice slip-and-fall case that turned on the "open and obvious" doctrine. In *Schultz*, the state intermediate appellate court concluded that a genuine issue of fact remained regarding whether the ice was open and obvious. In *Morgan*, the state intermediate appellate court had stated that black ice was not "open and obvious" as a matter of law. In *D'Agostini*, the state intermediate appellate court let the case proceed to trial, because the plaintiff had presented evidence that the ice was not noticeable.

Based on the reversal of these three cases, as well as on the reversal in *Kenny*, the state intermediate appellate court in *Ververis*, 718 N.W.2d at 386, stated, "[A]s a matter of law . . . , by its very nature, a snow-covered surface presents an open and obvious danger because of the high

probability that it may be slippery." The court also noted the consistency of this conclusion with another premises liability case, where the state supreme court noted that frost or ice on a roof was not hidden and that "anyone encountering it would become aware of the slippery conditions." *Perkoviq v. Delcor Homes-Lake Shore Pointe, Ltd.*, 643 N.W.2d 212, 215 (Mich. 2002).

This principle continues to receive application in snow and ice cases that involve a fall. *See Kaseta v. Binkowski*, 714 N.W.2d 15 (Mich. 2007) (reversing and adopting lower court dissent, which held that unnoticeable black ice on a well cleared driveway was open and obvious on a day of temperature fluctuations after a snowfall); *Royce v. Chatwell Club Apts.*, ___ N.W.2d ___; 276 Mich. App. 389, 392-396 (Mich. Ct. App.) (2007) (applying the principles from *Lugo* to conclude that snow-covered ice on a dark February evening was open and obvious); *Teufel v. Watkins*, 705 N.W.2d 164, 166 (Mich. Ct. App. 2007) (applying the general rule that snow and ice represent an open and obvious hazard and, so, bars liability in a case where the plaintiff could not see the ice on the other side of a pile of snow).

Based on the foregoing, it appears that Michigan jurisprudence now includes a near per se rule that, absent special circumstances, a possessor of land has no duty to warn of or remove snow and ice for invitees, because the average person with average intelligence in Michigan will observe snow and ice accumulation and the associated risks. Regardless of any reservation that this Court might hold as to the principle, policy, or prudence of the state's jurisprudence in this area, federalism requires a federal court to defer to the interpretation of state law by state courts. *See Ziebart Int'l Corp.*, 78 F.3d at 250.

That conclusion, however, must yield to the state courts' interpretation of state tort law. The near per se rule of Michigan jurisprudence – that a visible snow accumulation in Michigan in the

winter is open and obvious by its nature as a slippery substance – instead bars Defendants from liability. Plaintiff acknowledges that he did see snow on the ground, so the per se rule applies here. He has not identified any "special aspects" that could give rise to a uniquely high likelihood of harm. The parties do not dispute any genuine issues of material fact. The only issue is whether the snow on the ground in the circumstance that Plaintiff confronted was "open and obvious." The Michigan courts, however, have already answered that question as a matter of law. Accordingly, based solely on Michigan law, the Court will grant Defendants' motion for summary judgment.

IV.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [dkt #26] is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: December 21, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 21, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---